# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

ROBERT OVERFELT,

    *Plaintiff,*

vs.

BNSF RAILWAY COMPANY,

    *Defendant.*

Case No. 15-1239-EFM/KGG

## MEMORANDUM AND ORDER

Plaintiff Robert Overfelt filed an action under the Federal Employers' Liability Act ("FELA"), 45 U.S.C. §§ et seq. 51-60, against Defendant BNSF Railway Company ("BNSF"). He claims that as a result of Defendant's negligence, he was injured on June 11, 2013. Defendant seeks dismissal of the lawsuit asserting that the Court lacks personal jurisdiction over it. The Court finds that the exercise of personal jurisdiction is proper because Defendant had sufficient minimum contacts with Kansas, and the exercise of personal jurisdiction is not unreasonable. Thus, the Court denies Defendant's motion (Doc. 7).

### I.    Factual and Procedural Background[1]

Plaintiff Robert Overfelt is a resident of Wellington, Kansas. He works as a conductor employee for Defendant. Defendant BNSF is organized under the laws of Delaware, and its

---

[1] The facts are taken from Plaintiff's Complaint (Doc. 1), as well as from an affidavit (Doc. 12-1) attached to Plaintiff's Memorandum in Opposition to Defendant's Motion to Dismiss.

principal place of business is Fort Worth, Texas. Defendant's corporate officers and its headquarters are also located in Fort Worth, Texas.

Defendant hired Plaintiff in Kansas, employs him in Kansas, oversees him in Kansas, assigns him work in and from Kansas, and requires him to report to work in Kansas. The substantial majority of Plaintiff's on-duty time occurs in Kansas. In addition, Plaintiff received training and instruction regarding railroad operations in Kansas, including the methods he used in Texas on the day he was injured.

On June 10, 2013, Plaintiff's work originated in Kansas, and he reported to work in Kansas. On June 11, Plaintiff was working as a conductor in Defendant's Amarillo, Texas yard. Plaintiff was thrown from a gondola car to the ground and sustained injuries to his neck, back, spine, and left shoulder. Plaintiff traveled back to Kansas and his work ended for the day in Kansas, several hours after he was injured in Texas.

Plaintiff alleges, under FELA, that Defendant failed to provide him with a reasonably safe place to work; failed to provide adequate equipment and assistance to perform his job; failed to provide reasonably safe methods with which to work; failed to adequately supervise or train its employees in the performance of their duties; and failed to maintain, inspect, or repair equipment. Plaintiff seeks damages in excess of $75,000. Defendant seeks dismissal asserting that this Court lacks personal jurisdiction over it.

## II.     Legal Standard

"Under the Fourteenth Amendment, a State may authorize its courts to exercise personal jurisdiction over an out-of-state defendant if the defendant has certain minimum contacts with the State such that the maintenance of the suit does not offend traditional notions of fair play and

substantial justice."[2]  A plaintiff opposing a motion to dismiss based on lack of personal jurisdiction bears the burden of showing that jurisdiction over the defendant is appropriate.[3]  In a pretrial motion to dismiss, when the matter is decided on the basis of affidavits and written materials, the plaintiff is only required to make a prima facie showing that personal jurisdiction is proper to avoid dismissal.[4]  Once the plaintiff makes a prima facie showing, the defendant "must present a compelling case demonstrating that the presence of some other considerations would render jurisdiction unreasonable."[5]

Allegations in a complaint "must be taken as true to the extent they are uncontroverted by the defendant's affidavits.  If the parties present conflicting affidavits, all factual disputes must be resolved in the plaintiff's favor, and the plaintiff's prima facie showing is sufficient notwithstanding the contrary presentation by the moving party."[6]  "However, only the well pled facts of the plaintiff's complaint, as distinguished from mere conclusory allegations, must be accepted as true."[7]  A plaintiff must support jurisdictional allegations by "competent proof of the supporting facts if the jurisdictional allegations are challenged by an appropriate pleading."[8]

---

[2] *Am. Fid. Assur. Co. v. Bank of New York Mellon*, 810 F.3d 1234, 1237 (10th Cir. 2016) (quotation marks and citation omitted).

[3] *Kuenzle v. HTM Sport–Und Freizeitgerate AG*, 102 F.3d 453, 456 (10th Cir. 1996).

[4] *Id*.

[5] *OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1091 (10th Cir. 1998) (internal quotation marks and citation omitted). (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985)).

[6] *Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995) (internal quotation marks omitted).

[7] *Id*.

[8] *Id*. at 1508 (quoting *Pytlik v. Prof'l Res., Ltd.*, 887 F.2d 1371, 1376 (10th Cir. 1989)).

### III.   Discussion

"Before a federal court can assert personal jurisdiction over a defendant in a federal question case, the court must determine (1) whether the applicable statute potentially confers jurisdiction by authorizing service of process on the defendant and (2) whether the exercise of jurisdiction comports with due process."[9]  The act under which Plaintiff brings this action, FELA, does not provide for nationwide service of process.  Thus, Plaintiff must show that Defendant is subject to service of process under Kansas' long-arm statute.[10]  The Kansas Supreme Court has interpreted Kansas' long-arm statute to extend jurisdiction to the fullest extent allowed by the Due Process Clause.[11]  Thus, in this case, the Court need not conduct a statutory analysis apart from the due process analysis.[12]

The due process analysis involves a two-step inquiry.[13]  First, the plaintiff must show that the nonresident defendant has "minimum contacts" with the forum state by demonstrating that it purposefully availed itself of the protections or benefits of the state's laws, such that it should reasonably anticipate being haled into court there.[14]  If the plaintiff successfully establishes such minimum contacts, the burden shifts to the defendant to prove that the exercise of jurisdiction

---

[9] *Peay v. Bellsouth Med. Assistance Plan*, 205 F.3d 1206, 1209 (10th Cir. 2000) (internal quotation marks and citations omitted).

[10] *See* Fed. R. Civ. P. 4(k)(1)(A).

[11] *Merriman v. Crompton Corp.*, 146 P.3d 162, 179, 282 Kan. 433, 459 (Kan. 2006); *see also OMI Holdings,* 149 F.3d at 1090.

[12] *OMI Holdings*, 149 F.3d at 1090.

[13] *AST Sports Sci., Inc. v. CLF Distrib. Ltd.*, 514 F.3d 1054, 1057 (10th Cir. 2008).

[14] *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980);  *see also Hanson v. Denckla*, 357 U.S. 235, 253 (1958) ("[I]t is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.").

would offend "traditional notions of fair play and substantial justice."[15] The second inquiry is commonly referred to as the "reasonableness" test.

The Constitutional touchstone of the Due Process Clause is whether the defendant purposefully established minimum contacts in the forum State.[16] The minimum contacts requirement assures a reasonable expectation in the out-of-state defendant that it might be brought into court in the forum state.[17] This requirement ensures "that a defendant will not be subject to the laws of a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, or of the unilateral activity of another party or a third person."[18] To meet this standard, a plaintiff must show either specific or general jurisdiction.[19]

Defendant argues that specific personal jurisdiction does not exist in this case because Plaintiff's injuries do not arise out of Defendant's contacts with Kansas. In addition, Defendant contends that general personal jurisdiction does not exist because Defendant is not "at home" in Kansas. The Court will only address whether specific personal jurisdiction exists in this case as it is dispositive.

The Court may exercise specific personal jurisdiction if the defendant "purposefully directed" its activities to the forum state and the plaintiff's injuries "arises out of" the

---

[15] *Asahi Metal Indus. Co., Ltd. v. Superior Court of California, Solano Cnty.*, 480 U.S. 102, 113 (1987) (internal quotation marks and citation omitted); *see also AST Sports Sci., Inc.*, 514 F.3d at 1057.

[16] *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985).

[17] *AST Sports Sci., Inc.*, 514 F.3d at 1057.

[18] *Id.* at 1058 (internal quotation marks and citation omitted).

[19] *OMI Holdings, Inc.*, 149 F.3d at 1090-91.

defendant's activities in Kansas.[20]  Whether a plaintiff's injuries arise out of a defendant's contacts with the state generally requires "some sort of causal connection between a defendant's contacts and the suit at issue."[21]  In *Walden v. Fiore*,[22] the United States Supreme Court recently addressed the minimum contacts necessary to establish specific jurisdiction.  The Supreme Court explained that "[t]he inquiry whether a forum State may assert specific jurisdiction over a nonresident defendant focuses on the relationship among the defendant, the forum, and the litigation."[23]  The Supreme Court identified two elements to consider when determining whether the defendant's conduct had a substantial connection with the forum.[24]  First, "the relationship must arise out of contacts that the defendant *himself* creates with the forum State."[25]  Second, the "minimum contacts" analysis focuses on "the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there."[26]  With regard to this consideration, "although physical presence in the forum is not a prerequisite to jurisdiction, physical entry into the State—either by the defendant in person or through an agent, goods, mail, or some other means—is certainly a relevant contact."[27]

---

[20] *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1071 (10th Cir. 2008) (citing *Burger King*, 471 U.S. at 472).

[21] *Id.* at 1078.

[22] --- U.S. ---, 134 S. Ct. 1115 (2014).

[23] *Id*. at 1121 (internal quotation marks and citations omitted).

[24] *Id.* at 1121-22.

[25] *Id.* at 1122 (internal quotation marks and citation omitted).

[26] *Id.* (discussing contractual relationships and circulation of magazines in another state).

[27] *Id*. (citations omitted).

In this case, Defendant argues that Plaintiff's suit is unrelated to Kansas. Plaintiff's injury took place in Amarillo, Texas, and the railcar on which Plaintiff was working was only operated by Plaintiff in Texas.[28] Thus, Defendant asserts that the only affiliation between this lawsuit and Kansas is that Plaintiff resides in this state and Defendant conducts railroad operations here. Defendant simply ignores the substantial connections it has with Kansas that are related to Plaintiff's cause of action.

Plaintiff provides evidence, by way of affidavit, that Defendant hired Plaintiff in Kansas, employs him in Kansas, oversees him in Kansas, assigns him work in and from Kansas and requires him to report to work in Kansas. Plaintiff avers that the substantial majority of his on-duty time occurs in Kansas. In addition, Plaintiff received training and instruction regarding railroad operations in Kansas, including the methods he used in Texas on the day he was injured. One of Plaintiff's theories for his negligence claim asserts that Defendant provided inadequate training and instruction regarding work methods. With regard to the specific incident on June 11, although Plaintiff was hurt in Texas, Plaintiff's work originated the previous day in Kansas and terminated in Kansas several hours after he was injured in Texas.

As noted above, one of the considerations in a specific jurisdiction analysis is whether a defendant himself created the contacts with the forum state. In this case, Defendant itself created the contact with Kansas as it became an employer of an individual in the state of Kansas.[29] Specifically, Defendant employs Plaintiff in Kansas and has trained, employed, and directed Plaintiff's work activities in Kansas since 2004. Furthermore, Defendant has purposefully

---

[28] Defendant also contends that the railcar was never bound for Kansas but instead originated in California and was bound for Louisiana.

[29] Defendant employs approximately 3,600 employees in Kansas.

reached into Kansas by entering into an employment relationship with Plaintiff.[30] This simply is not a case of "random, fortuitous, or attenuated contacts, or of the unilateral activity of another party or a third person."[31] Instead, Plaintiff's injuries arise out of his employment relationship with Defendant and the injuries he sustained during his employment with Defendant and while on the job.

Defendant attempts to rely upon a case from the District of Kansas, *Macedo v. Green Valley Chem. Corp.*,[32] decided by the undersigned, as analogous to this case. Defendant contends that *Macedo* stands for the proposition that the location of the injury is the focus of the jurisdictional analysis regardless of where the plaintiff lives or works. The facts in *Macedo* in no way resemble the facts in this case.

In *Macedo*, the plaintiff worked for a trucking company based in Kansas.[33] Another Kansas company needed dry ice and contracted with an Indiana company who then engaged two Iowa companies (the defendants in the case) for the dry ice.[34] Because the defendants did not ship any of its products from Iowa and all of its sales were completed in Iowa, the Kansas company who needed the dry ice contracted with Plaintiff's employer to pick up the dry ice in Nebraska and bring it back to Kansas.[35] While Plaintiff was in Iowa picking up the dry ice, he

---

[30] The Court also notes that Defendant has offices in Kansas and has a registered agent because it is registered with the Secretary of State in Kansas.

[31] *Burger King Corp.*, 471 U.S. at 475.

[32] 2013 WL 1776666 (D. Kan. Apr. 25, 2013).

[33] *Id.* at *1.

[34] *Id.*

[35] *Id.*

fell on the ice in the defendants' parking lot.[36] Plaintiff then brought suit. He did not bring suit against his Kansas-based employer. Instead, he brought suit against the two companies in Iowa that had no connection to his Kansas-based employer or to Kansas. As the Court noted in *Macedo*, "Plaintiff's claims primarily involve allegations that Iowa-based Defendants failed to maintain their Iowa facilities, thereby causing Plaintiff to slip and fall in Iowa while loading a shipment of Midwest's dry ice ultimately destined for Kansas. However, Plaintiff does not demonstrate any nexus between his claims and [defendants] alleged contacts with Kansas."[37] The defendants did not purposefully direct activities toward Kansas, and the plaintiff's injuries did not arise out of any the defendants' actions directed toward Kansas.[38]

There are stark differences in this case. Defendant purposefully directed activities toward Kansas as it entered into an employment relationship with Plaintiff in Kansas. Defendant supervised and directed Plaintiff's activities in and from Kansas. Plaintiff's claim relates to an injury that occurred while he was working for Defendant and at Defendant's facility. Although the injury occurred in Texas, Plaintiff's employment with Defendant is in Kansas, and the injury occurred on a job that originated and ended in Kansas. Thus, the nexus between Plaintiff's claim and Defendant's contact with Kansas is that Defendant employed Plaintiff in Kansas and Plaintiff was injured on the job due to the alleged negligence of Defendant. In sum, the Court finds that minimum contacts exist to satisfy specific personal jurisdiction and the Court need not address whether general jurisdiction exists.

---

[36] *Id.*

[37] *Id.* at *4.

[38] *Id.*

Having established Defendant's minimum contacts, the Court must determine whether exercising jurisdiction over Defendant would offend "traditional notions of fair play and substantial justice."[39] At this point, the burden shifts to Defendant to "present a compelling case that the presence of some other considerations would render jurisdiction unreasonable."[40] The weight of the burden on Defendant is inversely proportionate to the strength of the minimum contacts.[41] The weaker the defendant's minimum contacts, the less the defendant must show to prove unreasonableness.[42] Conversely, the stronger the minimum contacts, the more the defendant must show to prove unreasonableness.[43] However, when a non-resident defendant has purposefully directed activities toward the forum state, it must "present a compelling case that the presence of some other considerations would render jurisdiction unreasonable."[44]

Defendant does not address the reasonableness factor. Thus, Defendant fails to meet its burden that the exercise of personal jurisdiction over it would be unreasonable. Accordingly, the Court denies Defendant's motion to dismiss.

---

[39] *World-Wide Volkswagen*, 444 U.S. at 292 (citation omitted).

[40] *Dudnikov*, 514 F.3d at 1080 (quoting *Pro Axess, Inc. v. Orlux Distrib., Inc.*, 428 F.3d 1270, 1280 (10th Cir. 2005)).

[41] *OMI Holdings, Inc.*, 149 F.3d at 1091-92.

[42] *Id.* at 1092 (quoting *Ticketmaster-New York, Inc. v. Alioto*, 26 F.3d 201, 210 (1st Cir. 1994)); *accord Burger King Corp.*, 471 U.S. at 477.

[43] *See id.*

[44] *Burger King Corp.*, 471 U.S. at 477.

**IT IS THEREFORE ORDERED** that Defendant's Motion to Dismiss (Doc. 7) is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Strike Defendant's Reply, or in the alternative, for Leave to File a Surreply (Doc. 15) is **DENIED**.

**IT IS SO ORDERED**.

Dated this 15th day of March, 2016.

*/s/ Eric F. Melgren*
ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE